IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PATRICIA HADDOX TURNER o/b/o
TONY TURNER, deceased                                                                    PLAINTIFF

     v.     Civil No. 05-4021

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                  DEFENDANT

## **MEMORANDUM OPINION**

**Factual and Procedural Background:**

  Plaintiff, Patricia Turner, the widow of Tony Turner, the claimant herein, appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her applications for disability insurance benefits (hereinafter "DIB"), and supplemental security income benefits (hereinafter "SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and § 1602 of Title XVI, *42 U.S.C. § 1381a,* respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

  The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted here except as necessary. However, it should be noted that the claimant filed his applications on June 18, 2002 (T. 58-60, 257-258). For purposes of the DIB application, claimant alleged an onset date of January 1, 2002. The applications were denied initially and on reconsideration (T. 40-41, 44-45, 262-263, 267-268). Plaintiff requested an administrative hearing, which request was granted, and the hearing was set for March 3, 2004

(T. 23-27). Unfortunately, the claimant was killed on February 25, 2004 (T. 61). The claimant's spouse was substituted as the plaintiff in this action, and a new hearing was set and conducted on July 9, 2004, and wherein she was represented by counsel (T. 271-293). On September 24, 2004, the ALJ issued an unfavorable decision (T. 11-16). By Order dated February 11, 2005, the Appeals Council denied the plaintiff's request for review of the hearing decision, thus making the ALJ's decision the final decision of the Commissioner (T. 3-5). Both parties have filed appeal briefs, and this matter is ready for consideration (T. 5 & 6).

The claimant was 39 years of age at the time he filed his applications, and 41 years old when he died. He had an eleventh grade education (T. 15, 107)). He had past relevant work as a construction worker, concrete worker, factory assembler, poultry processing plant worker and saw machine operator (T. 88, 102). Claimant asserted disability due to an above the knee amputation of his right lower extremity and pain, due to the trauma and resultant osteomyelitis.[1] The claimant sustained this injury when struck by a motor vehicle on January 1, 2002 (T. 101). As has been noted, on February 25, 2004, the plaintiff was again struck by first one, and then a second motor vehicle, while attempting to ambulate across the road on crutches. The official cause of death was listed as a closed head injury (T. 61).

**Applicable Law:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart, 292 F.3d 576, 583 (8th*

---

[1] Osteomyelitis is defined as the inflammation of bone caused by an infection, usually a pyogenic (pus producing), organism, although any infection agent may be involved. It may remain localized or may spread through the bone to involve the marrow, cortex, cancellous tissue, and periosteum. *Dorlands's Medical Dictionary, p. 1289 (29th Ed.2000).*

Cir.2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.2003)*. As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari, 258 F.3d 742, 747 (8th Cir.2001)*. In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000)*.

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A)*. The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *42 U.S.C. §§ 423(d)(3), 1382c(3)(C)*. A claimant must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical

-3-

and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See *20 C.F.R. § § 404.1520(a)-(f)(2003)*. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. See *McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir.1982); 20 C .F.R. § § 404.1520, 416.920 (2003)*.

Further, the ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, *5 F.3d 342, 344 (8th Cir.1993)*. The law on this issue is clear. Under *Polaski v. Heckler*, *739 F.2d 1320, 1321-22 (8th Cir.1984),* "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala*, *45 F.3d 1190, 1193 (8th Cir.1995); see also Baker v. Sec. of HHS, 955 F.2d 552, 555 (8th Cir.1992)*. The absence of an objective medical basis which supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a claimant's subjective complaints of pain. *Polaski v Heckler, 751 F.2d 943, 948 (8th Cir.1984); see also, Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.1995)*. The ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler*, *783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 948-950 (8th Cir.1984))*. Consideration must also be given to all the evidence presented related to the claimant's prior work history, and the observations of non-medical third parties, as well as

AO72A
(Rev. 8/82)

treating and examining physicians related to the above matters. *20 C.F.R. § 416.929; Social Security Ruling 96-7p; Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984)*(subsequent history omitted).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, *739 F.2d at 1322.*

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, *830 F.2d 878, 882 (8th Cir.1987)*. The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, *862 F.2d 176, 179 (8th Cir.1988).*

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, *783 F.2d at 130* (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

In summary, the ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the

-5-

inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, 783 F.2d at 131 (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

Residual functional capacity is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations. *Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.2001);* see also, *Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995); 20 C.F.R. §§416.945(a).*

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988).* Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." *Id.; See 20 C.F.R., Pt. 404, Subpart P, Appendix 2, §§200.00(e).*

When a claimant suffers from exertional and nonexertional impairments, as asserted here, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the plaintiff's work capacity. *Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir.1988).* If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. *Id.* That is to say, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the

AO72A
(Rev. 8/82)

nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Id. at 349-50.* The United States Court of Appeals for the Eighth Circuit has explained as follows:

> In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

*Id. at 350.* See also, *Holz v. Apfel, 191 F.3d 945, 947 (8th Cir.1999); Foreman v. Callahan, 122 F.3d 24, 26 (8th Cir.1997); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.1997).*

**Discussion:**

It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995).* Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility. However, the circumstances in this case necessitated that claimant's limitations be described, for the most part, by his widow, the plaintiff, and his friend, Ms. Vera Smith. As has been stated, in evaluating subjective complaints, the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See *Polaski v. Heckler, 739 F.2d at 1322.* Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id. at*

AO72A
(Rev. 8/82)

*1322*; *Pearsall v. Massanari,* 274 F.3d at 1217-1218.

In his decision, the ALJ acknowledges the above stated factors. However, there is a scant discussion with respect to said factors in his decision (T. 13). This is reversible error. At one point in the decision, before enumerating the *Polaski* factors, the ALJ stated:

> Vera Hooks said she lived across the street from claimant and his wife. Claimant was always fatigued. She testified he could not mow his yard.
>
> Regarding his activities of daily living, Mr. Turner stated on his application forms that he could take care of his personal needs and maintain his household.

(T. 12). In fact, the claimant completed a Disability Supplemental Interview Outline on June 18, 2002, stating he remained capable of: bathing; dressing; hair care; shaving; washing dishes; taking out trash; making sandwiches (although it took longer than before the amputation); walking for errands or exercise; going to the bank/post office; watching television; reading; and, visiting with friends and relatives. However, claimant could no longer: do laundry; change sheets; iron; vacuum/sweep; make home repairs; perform appliance or car repairs; wash a car; mow the lawn; rake leaves or do garden work; shop for groceries or clothes; prepare frozen dinners, meats, vegetables, desserts, homemade bread or dishes that require a recipe; pay bills; or, drive (T. 83-84). He also stated he suffered from memory loss and insomnia (T. 77). This form, alone, belies the ALJ's statement that claimant remained capable of taking care of personal needs and maintaining his household.

Although the plaintiff and the claimant separated in 1996, they did not divorce (T. 276). In fact, during the time period prior to and after the claimant's injury, they lived next door to one another, and plaintiff testified that she saw the claimant on a daily basis (T. 283). Plaintiff also testified that claimant was "constantly in pain" and was only able to ambulate with

-8-

crutches (T. 283). The plaintiff opined that claimant could not mow his yard, do any housework or perform any type of gainful work, after his first accident (T. 286).

Ms. Vera Hooks stated that she knew both the plaintiff and claimant, having met them in the early 1980's (T. 288). She testified that the claimant could not mow his lawn, and could wash dishes only if he put his crutches nearby. She also stated that the claimant appeared to be in pain, and that he "had to stop and rest a little bit because he give out easily." (T. 290).

The testimony of the plaintiff and the lay witness further undermines the ALJ's above mentioned finding. Not only is the ALJ's *Polaski* analysis virtually nonexistent, he does not adequately discuss any basis for his finding, with respect to the women's testimony. In fact, he addresses their credibility in the body of the decision, as follows:

> The undersigned concludes that the testimony of Ms. Turner and Vera Smith was **fairly credible because it was consistent with the objective medical evidence and other evidence of record.** (citation omitted) (emphasis added)

(T. 13). And subsequently, in his findings, the ALJ states:

> Claimant's wife's testimony and the testimony of Vera Smith was **not entirely credible because it was not consistent with the objective medical evidence and other evidence of record.** (emphasis added)

(T. 15).

The United States Court of Appeals for the Eighth Circuit has frequently criticized the failure of the Commissioner to consider subjective testimony of the family and others, and has held that a failure to make credibility determinations concerning such evidence requires a reversal and remand. *Basinger v. Heckler, 725 F.2d 1166, 1169-70 (8th Cir.1984)*; see also *Simonson v. Schweiker, 699 F.2d 426, 429 (8th Cir.1983)* (failure to consider subjective testimony about pain). If the ALJ is to reject such testimony, it must be specifically discussed

AO72A
(Rev. 8/82)

and credibility determinations expressed. The somewhat contradictory statements made by the ALJ about the lay testimony herein indicates, at the very least, that he failed to consider this evidence properly. See *Smith v. Heckler 735 F.2d 312, 317 (8th Cir.1984)*. Thus, this decision must be reversed. The significance in failing to adequately consider and discuss his credibility finding as to this testimony is made more critical by the fact that the claimant is deceased, and his only testimony is in the form of written answers on a form filed very early on in this process.

Finally, it should be noted that the record indicates an asserted lack of transportation and finances caused the claimant to miss at least one doctor's appointment and prevented him from obtaining a prosthesis (T. 42, 77, 125, 117). Nonetheless, in his opinion, the ALJ states:

> ... 'He is quite ready for prosthetic fitting and training at the present time and this will be arranged. The patient is to have this done and return in approximately 6 weeks or sooner should he have any difficulties or problems' (Exhibit 3F). Mr. Turner never returned to see Dr. Norris and never followed up in obtaining a prosthesis within 12 months of his alleged onset date of December 231, 2001.

(T. 12). There is no discussion of the alleged financial/other difficulties which may have contributed to the situation. *Dover v. Bowen, 784 F.2d 335, 337 (8th Cir.1986); Benson v. Heckler, 780 F.2d 16, 18 (8th Cir.1985); Tome v. Schweiker, 724 F.2d at 714.* Upon remand, the ALJ is directed to fully assess the impact, if any, that plaintiff's lack of finances had on his ability to obtain appropriate medical treatment. At the very least, the ALJ must indicate his consideration of such factor.

The Court recognizes that the ALJ's decision may be the same after proper analysis on remand, but proper analysis is required. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th*

AO72A
(Rev. 8/82)

*Cir.1991).*

**Conclusion:**

Accordingly, we conclude that the ALJ's decision denying benefits to the plaintiff on behalf of the claimant, is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for reconsideration, to include a more thorough analysis and discussion of plaintiff's subjective complaints and nonexertional limitations, the lay witness testimony and the asserted financial difficulties.

ENTERED this 13th day of March, 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)